**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 16-2435**

ADONIA K. SMITH,

       Plaintiff – Appellant,

v.

LOUDOUN COUNTY PUBLIC SCHOOLS,

       Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  James C. Cacheris, Senior District Judge.  (1:15-cv-00956-JCC-TCB)

Argued:  January 25, 2018                         Decided:  March 1, 2018

Before WILKINSON, TRAXLER, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Timothy Lawrence Coffield, COFFIELD PLLC, Keswick, Virginia, for Appellant.  Julia Bougie Judkins, BANCROFT, MCGAVIN, HORVATH & JUDKINS, PC, Fairfax, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Adonia Smith appeals a district court order granting summary judgment against her on her claims against Loudoun County Public Schools for wrongful discharge and retaliation under the Americans with Disabilities Act (ADA), *see* 42 U.S.C. § 12101, *et seq.* Finding no error, we affirm.

I.

Loudoun County (Virginia) School District hired Smith in August 2007 as a teacher of special education for the hearing impaired at Frances Hazel Reid Elementary School. Smith has been profoundly deaf since birth — she hears nothing, cannot speak, and cannot read lips. Smith is fluent in American Sign Language ("ASL"). It is her first and primary language, with English being her second. She was assigned to teach several hearing-impaired students. A large part of her job was drafting and managing the Individualized Education Plans ("IEPs") for the students.

Loudoun attempted to accommodate Smith's disability in various ways. For scheduled events, such as staff meetings, parent-teacher conferences, IEP meetings, and other employer-sponsored events, Loudoun provided ASL interpreters through a contract with an interpreter-placement company, WeInterpret. Smith could also request a WeInterpret interpreter outside of scheduled events. Smith claimed, however, that the interpreters occasionally did not show up and often were not competent when they did appear.

Another accommodation issue involved informal communication between Smith and people in different rooms or buildings. To accommodate Smith's need to verbally

2

communicate with such people, Loudoun installed a video relay phone in Smith's class and another in a workroom across the hall in spring 2009. That phone allowed Smith to sign ASL into a screen linked to an interpreter who would verbally translate through a standard phone line. In her first two years at the school, Smith also benefited from working in the same classroom as a colleague who was fluent in ASL and from having an instructional assistant who was nearly fluent in ASL.

Smith's initial time at the school was successful. Following her first year – the 2007-08 school year – Principal Liz Fye gave her a favorable end-of-year review. Smith remained on good terms with the administration during the first half of her second year as well, and Loudoun's deaf and hard-of-hearing specialist, Eileen McCartin, evaluated Smith positively in December 2008.

In early 2009, however, problems began to surface. In February 2009, Principal Fye held a meeting for all deaf/hard-of-hearing staff and announced the school would be adopting a "total communication approach" to educating deaf/hard-of-hearing students. J.A. 1212. Rather than concentrating on ASL, teachers were to use whatever communication method was effective for teaching a hearing-impaired student. Smith strongly disagreed with this method and contended hearing impaired students should communicate primarily in ASL. Smith went so far as to send an email to her students' guardians that derided the new approach.

In early March 2009, Smith sent an email to Principal Fye requesting a full-time ASL interpreter during the school day. Smith stated that an interpreter would be a "big help" to her for her "interaction with school administrators, teachers, staff members,

3

parents, and students who don't know ASL." J.A. 1398. Principal Fye submitted the request to the district's risk management division, which undertook to consider the issue with the employer benefits department.

On March 13, 2009, Smith received her first documented reprimand for interpersonal conflicts. Assistant Principal Richard Hammler reprimanded Smith for getting "angry and hostile" toward a substitute teacher and expressed disappointment that Smith had not heeded his "plea on two occasions for teamwork and professionalism." J.A. 1401.

The disagreements and reprimand notwithstanding, Smith received an overall satisfactory performance review for her second year, and Loudoun renewed her contract for a third year. Still, Principal Fye noted that there were several areas where she needed to improve: her "lesson plans and assessments need[ed] to be more detailed and completed in a timely manner"; she needed to keep a binder with each child's IEP, schedule, lesson plans and assessments of their progress toward their goals; she needed to "work on the knowledge base of the curriculum"; and she needed "to work on completing the [IEP process] in a timely manner." J.A. 238. Fye also indicated Smith needed to improve her "collaboration" with the other teachers at the school — hearing teachers who did not know ASL — for example, by sharing lesson plans with the general classroom teacher. J.A. 238. She recommended Smith work with a mentor on these issues.

Smith responded that she was familiar with the curriculum but needed to teach "differently from the established curriculum"; that she "was fully ready to work closely with the regular classroom teacher but [that teacher's] attitude was condescending"; and

4

that she did not need a mentor. J.A. 240-41. Smith did not indicate the lack of a translator was to blame for her deficiencies.

Unfortunately for Smith, the 2009-2010 school year turned out to be her most difficult yet. Before the start of the year, the two teachers Smith had relied on for help in informal communication were transferred to other positions and thus no longer available to help Smith, although one of those teachers was replaced by another teacher who knew ASL. Smith reiterated her request for a full-time personal ASL interpreter on numerous occasions in the fall of 2009, emphasizing that a full-time interpreter was needed "to assist me in my ongoing communications with [school] staff . . . in order to avoid misunderstandings." J.A. 1635. Around this time, the administration moved the video relay phone from Smith's classroom to a locked equipment room in the library. Smith added the return of her video relay phone to her previous accommodation requests.

Prior to the 2009-2010 school year, the school had hired a new principal (Brenda Jochems) and assistant principal (Ellen McGraw), and these administrators quickly developed substantial concerns with Smith's performance. For example, Smith was expected to have prepared lesson plans in her classroom ready for administrators to review during classroom observations, but Jochems and McGraw frequently had to request her lesson plans as they were not always available in the classroom or submitted for review. Additionally, Smith had frequent conflicts with Jochems, McGraw, and McCartin based on Smith's disagreement with Loudoun policy regarding how to teach hearing-impaired children.

5

During the school year, Smith received letters of reprimand from Jochems, McGraw, and McCartin. Jochems reprimanded Smith for refusing to allow a hearing-impaired substitute teacher to enter Smith's classroom and for refusing to work with her colleague. McCartin reprimanded Smith for unprofessional conduct, noting that over several months McCartin had observed "a pattern of behavior that has become more and more unprofessional and unproductive," including a then-recent incident when Smith became "irate" after being assigned to continue teaching two particular students. J.A. 914. And McGraw reprimanded Smith for "inappropriate behavior" that occurred when Smith allegedly attempted to leave an IEP meeting shortly after it began and then contributed only unproductive comments during the remainder of the meeting. J.A. 913.

Furthermore, on November 3, 2009, Loudoun's employee-benefit supervisor denied Smith's requests for a video relay phone in her classroom and for a daily full-time interpreter. The supervisor explained that Smith already had access to two video relay phones at school and that the school would accommodate impromptu verbal interpretation by installing a video remote interpreting service within sixty days. In actuality, however, the service was not installed and working until seven months later.

In 2009, Smith was placed on the "December list," alerting her that she was at risk for non-renewal of her contract for the following year. J.A. 261. In a letter explaining this decision, Principal Jochems criticized Smith for insufficient and untimely lesson planning, inadequate student assessment, poor and untimely IEP management, and "[s]trained professional relationships with the special education team that has caused undue stress and hurt feelings." J.A. 261. Nonetheless, the school sought to provide

6

Smith with assistance in making the improvements she would need in order to keep her job. For example, Jochems and McGraw met with her weekly with an ASL interpreter to assist her in understanding and completing lesson plans, IEPs, and other issues. Other employees were also assigned to assist Smith in preparing the IEPs and gathering documentation for the Virginia grade-level assessment ("VGLA") binders.

Nonetheless, Smith failed to make the necessary improvements. As a result, Principal Jochems gave her a mid-year rating of "unsatisfactory," noting that she had failed to develop "a balanced approach to teaching American Sign Language . . . at a pace that allows the children to reasonably advance." J.A. 271. Jochems also criticized Smith for not developing her students' reading abilities and for creating tension with colleagues. In the end, Jochems did not recommend that Smith's contract be renewed. On March 1, 2010, the district superintendent informed Smith by letter that he planned to recommend that the School Board not renew her contract.

In April 2010, Jochems reprimanded Smith again for numerous issues relating to the VGLA binders containing students' confidential IEP materials, the most significant of which was that she took the materials home – a violation of state law and regulations. Additionally, with the legal deadline for completion of the binders fast approaching and with the binders not yet completed, the school cancelled approval of leave it had previously granted for Smith to attend a conference. Smith nonetheless took sick leave and secretly attended the conference. This was the last straw for Jochems, who asked the superintendent to terminate her. Smith was terminated effective June 22, 2010.

Smith subsequently filed suit in federal district court alleging three claims under the ADA: failure to provide reasonable accommodations, retaliatory termination, and wrongful discharge. Loudoun moved for summary judgment on all claims, and Smith opposed the motion.

The district court denied Loudoun's motion as to the reasonable-accommodation claim but granted it as to the causes of action for retaliatory termination and wrongful discharge. Regarding these latter two claims, the court concluded that Smith had failed to come forward with facts or evidence to dispute or contradict several legitimate bases for termination set forth by Loudoun and that Smith had failed to provide any evidence that Loudoun's proffered reasons for termination were a pretext for either retaliation or discrimination.

The case twice proceeded to trial on Smith's claim of failure to provide reasonable accommodation. The first trial ended in a mistrial, and the second yielded a verdict for Smith in the amount of $310.00.

## II.

Smith now appeals the grant of summary judgment against her on her retaliatory-termination and wrongful-discharge claims.

Upon review of the briefs and the record, and after consideration of oral arguments, we conclude that the district court correctly granted summary judgment against Smith on these claims, for the reasons stated in the district court's thorough opinion. *See Smith v. Loudoun Cty. Pub. Sch.*, No. 1:15CV956, 2016 WL 659786 (E.D. Va. Feb. 18, 2016). Accordingly, we affirm on the reasoning of the district court.

*AFFIRMED*